## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **WESLEY T. MOORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. CIV-11-86-M** |
| **v.** | ) | |
| **CITY OF OKLAHOMA CITY and** | ) | |
| **DANIEL GODSIL** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MOTION FOR SUMMARY JUDGMENT
## OF DEFENDANT DANIEL GODSIL
## AND BRIEF IN SUPPORT

Susan Ann Knight, OBA No. 14594
Stacey Haws Felkner, OBA No. 14737
MANCHESTER & KNIGHT, PLLC
211 North Robinson, Suite 800 N
Oklahoma City, OK, 73102
Phone: (405)235-4671
Facsimile: (405)235-5247
**Attorney for Defendant Daniel Godsil**

Dated: December 1, 2011

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT DANIEL GODSIL AND BRIEF IN SUPPORT  . . . . . . . . . . . . . . . . . . 1

BRIEF IN SUPPORT OF THE MOTION FOR
SUMMARY JUDGMENT OF DEFENDANT GODSIL . . . . . . . . . . . . . . . . . . . . . . . . 1

UNCONTROVERTED FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT AND AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        PROPOSITION I  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            DEFENDANT GODSIL HAD PROBABLE CAUSE
            TO ARREST PLAINTIFF MOORE  . . . . . . . . . . . . . . . . . . . . . . . . . 7

        PROPOSITION II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            DEFENDANT GODSIL IS ENTITLED
            TO QUALIFIED IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

*Clark v. Edmunds,* 513 F.3d 1219, 1222 (10th Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cortez v. McCauley,* 478 F.3d 1108, 1114 (10th Cir.2007) . . . . . . . . . . . . . . . . . . . . . . . 15

*Galleta v. Deasy,* 9 Fed.Appx. 909, 2001 WL 575431 (10th Cir. 2001) . . . . . . . 12, 13, 16

*Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 537, 116 L.Ed. 2d 589 (1991) . . . . 15, 16

*Koch v. City of Del City,* 2010 WL 1329819 (W.D. Okla. 2010) . . . . . . . . . . . . . . . . . 11

*Koch v. Del City,* _ F. 3d. ___,
2011 WL 5176164 (10th Cir. November 2, 2011) . . . . . . . . . . . . . . . . . . . . . . . . 11, 13-16

*Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir.2009) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mecham v. Frazier,* 500 F. 3d 1200, 1205-1206. (10th Cir. 2007) . . . . . . . . . . . . . . . . . 15

*Serna v. Colorado Department of Corrections,*
455 F.3d 1146, 1150 (10th Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Trent v. State,* 1989 OK CR 36, 777 P. 2d 401 . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 13, 16

*United States v. Christian,*
190 Fed.Appx. 720, 2006 WL 2328749 (10th Cir. 2006) . . . . . . . . . . . . . . . . 8, 9, 13, 16

*United States v. Sanchez,* 555 F. 3d 2009 (10th Cir. 2009) . . . . . . . . . . . . . 10, 11, 13, 16

## MOTION FOR SUMMARY JUDGMENT OF
## DEFENDANT DANIEL GODSIL AND BRIEF IN SUPPORT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Daniel Godsil requests the court grant summary judgment in his favor. There are no material questions of fact regarding the claim against Defendant Godsil and he is entitled to judgment as a matter of law. A brief in support of this motion is attached.

## BRIEF IN SUPPORT OF THE MOTION FOR
## SUMMARY JUDGMENT OF DEFENDANT GODSIL

On July 24, 2009, at approximately 6:30 p.m., Oklahoma City Police Officer Daniel Godsil was dispatched to a call that two men were selling drugs in the parking lot of a convenience store and refusing to leave. Given the brazen nature of this crime, where drug dealers chose to "stand their ground" rather than run as soon as their illegal activity was detected by store personnel, several other officers responded to the call as backup. When Officer Godsil arrived at the convenience store, one of the suspects attempted to flee. The suspect was apprehended by Officer Godsil and the other officers across the street from Plaintiff Wesley Moore's house. In order to take the suspect into custody, the officers had to use pepper spray. At the time Plaintiff Moore decided to involve himself in this situation, the suspect had not yet been placed in a police car and some of the responding officers were still trying to rinse the pepper spray out of the suspect's face.

There were four police cars, including Officer Godsil's car, parked along the curb on the other side of the street. A fifth police car, driven by Officer Burton, pulled up parallel to Officer Godsil's car in the middle of road. This car was behind the driveway next door

to Plaintiff Moore's house, which is his mother's residence.  The two cars were double parked for a few minutes at most, and traffic was able to pass the police cars.  However, it appeared to Plaintiff that the second car was blocking his mother's driveway.  It was during this few minutes, while the officers present were still handling the initial call, that Plaintiff's mother decided she needed to drive to the pharmacy.  This was not an emergency situation. The pharmacy was only a few blocks away, and Mrs. Moore believed it was open until 9:00 in the summer.  While it is understandable Mrs. Moore does not like to drive after dark, it does not get dark until after 8:30 p.m. in July.

When Plaintiff Moore saw his mother come out to her car, Plaintiff approached a third officer, Officer Garrett, who was standing near Officer Burton's car and asked him to have the police car moved.  Officer Garrett asked the Plaintiff to wait a minute.  Instead, unhappy that Officer Garrett did not immediately convey this request to Officer Burton, Plaintiff began to walk towards Officer Burton's car.  When Officer Godsil saw Plaintiff approaching the police car, he ordered Plaintiff to get out of the street.  When Plaintiff ignored this command, Officer Godsil placed Plaintiff under arrest for the municipal offense of "Interference with Official Process–Disobeying a Lawful Command."

Plaintiff filed the instant lawsuit against the City of Oklahoma City and Officer Godsil.  The claim against the City, which is brought under the Oklahoma Governmental Tort Claims Act, alleges that Officer Godsil negligently used unnecessary roughness in handcuffing Plaintiff.  The claim against Officer Godsil, which is brought under 42 U.S.C

§1983, alleges that Officer Godsil violated Plaintiff's constitutional and civil rights by falsely arresting him. Plaintiff apparently believes the arrest for interference was unlawful because he believes Officer Godsil lacked the authority to order Plaintiff out of the street. Regardless of who holds actual title to the street, however, Officer Godsil had probable cause to arrest Plaintiff, as is discussed in Proposition I. Alternatively, as is discussed in Proposition II, even if this court finds probable cause was lacking, Officer Godsil is entitled to summary judgment on the grounds of qualified immunity.

## UNCONTROVERTED FACTS

1.     On July 24, 2009, Defendant Officer Daniel Godsil responded to a call at a convenience store regarding drug dealers who would not leave. One of the suspects fled and was apprehended near Plaintiff Moore's house. See, Police Report, attached as Exhibit 1.[1] Several officers participated in this pursuit and arrest. See, Deposition of Daniel Godsil, pp. 35, 45, relevant pages attached as Exhibit 2. The officers were forced to use pepper spray to take the suspect into custody. Exhibit 2, p. 36.

2.     At the time Plaintiff Wesley Moore first approached the officers, the suspect was under arrest, but he was not yet in a police car. Exhibit 2, pp. 35-36, 45-46. He was on the ground, being monitored and decontaminated from the pepper spray and waiting for a

---

[1]Defendant Godsil recognizes the police report is hearsay. It is offered only for background information regarding the first arrest.

police supervisor to arrive.  Exhibit 2, pp. 36, 45-46.[2]

3.      Although Plaintiff Moore may not have been aware of all the details of the ongoing incident, he could observe that the incident was serious enough to require pepper spray to control the suspect and that the suspect was not yet contained in a police car.  He testified the suspect was "on the ground" and was "fuming at the mouth and slobbering, so automatically you would just assume that they had just maced him."  Deposition of Wesley Moore, pp. 28-29, relevant portions attached as Exhibit 3.  He also observed four police cars parked on the street facing east.  Exhibit 3, p. 29

4.      While Plaintiff Moore was watching this process, he saw his mother, Maxine Moore, come out of her residence next door.  She told him she was going to get her medicine.  Exhibit 3, pp. 30-31.  At this point, Mrs. Moore had room to pull out of her driveway, but before she did so another police car pulled up behind her driveway.  Exhibit 3, pp. 29-32.  This car was driven by Officer Burton, and he stopped briefly  parallel to Officer Godsil's car to give his supplemental report to Officer Godsil.  Exhibit 2, pp. 22, 32.

5.      The two police cars were parked in this manner for no more than a few minutes.  Officer Godsil estimated a "couple of minutes, a few minutes."  Exhibit 2, p. 22.  Plaintiff Moore could not give an exact time frame but also estimated "a few minutes."  Exhibit 3, p. 45.

---

[2]Whenever pepper spray or other force is used, Oklahoma City Police Department policy requires that a police supervisor interview the suspect and requires all involved officers to submit reports.  Exhibit 2, pp. 36, 46.

6.      Officer Burton and Officer Godsil were not blocking the road. Traffic was able to pass their cars during this period. Exhibit 2, p. 19. However, Plaintiff Moore believed it would be difficult for his mother to exit her driveway. Exhibit 3, pp. 30-31, 43-44.

7.      Plaintiff Moore approached Officer Garrett, who was standing near Officer Burton's and Officer Godsil's cars. He asked Officer Garrett to pull Officer Burton's car up so his mother could leave. Officer Garrett told Plaintiff to "wait a minute." Exhibit 2, p. 39; Exhibit 3, pp. 42.

8.      Mrs. Moore testified she does not like to drive after dark. Deposition of Maxine Moore, p. 13, relevant pages attached as Exhibit 4. However, this incident occurred between 6:00 and 7:00 p.m. Exhibit 4, p. 14. According to the Farmer's Almanac, sunset on July 24, 2009 was approximately 8:40. Mrs. Moore also testified she believed the pharmacy was open until 9:00 at this time of year. Exhibit 4, p. 14. Thus, Mrs. Moore could easily have waited a few minutes.

9.      Despite the absence of any real emergency, Mrs. Moore was not willing to wait even a few minutes for Officer Burton to move his car. She decided she would just "try to go across some of the yards" instead. Exhibit 4, p. 17.

10.     At this point, Plaintiff Moore came back into the road and began walking towards Officer Burton's car to speak to him directly. Exhibit 3, p. 44. Plaintiff was now blocking the portion of the road which was open to traffic. Exhibit 2, pp. 23-24. Officer Godsil ordered Plaintiff Moore to exit the roadway. Exhibit 2, p. 23.

5

11.     Officer Godsil believes this command was given three times.  Exhibit 2, p. 23.
Plaintiff asserts Officer Godsil only made this demand once or twice.  Plaintiff first testified
Godsil told him to get out of the street once and then admitted Godsil also said "If I tell you
one more time, I'm going to arrest you." Exhibit 3, pp. 47-48.  Whether he was in fact told
twice or three times, it is undisputed Plaintiff was ordered out of the road and was given a
warning prior to arrest.

12.     Rather than obey this command, Plaintiff Moore began to argue with Officer
Godsil about whether the road was part of his property.  Exhibit 3, pp. 45-46.

13.     At this time, Officer Godsil placed Plaintiff Moore under arrest for Interfering
with Official Process by Disobeying a Lawful Command.  Exhibit 2, p. 49.  A copy of the
citation is attached as Exhibit 5.  The citation was subsequently dismissed, and the dismissal
is attached as Exhibit 6.

14.     When Plaintiff was arrested, he was handcuffed.  Exhibit 2, p. 50.  Officer
Godsil does not specifically remember placing the handcuffs on Plaintiff, but assumes he did
since the handcuffs were his.  Exhibit 2, p. 53.  Any time Officer Godsil places an individual
in handcuffs, he checks to make sure he can place a finger between the handcuff and the
wrist to ensure the handcuffs are not too tight.  Exhibit 2, p.  53-56.  When Plaintiff
complained that the handcuffs were too tight, another officer at the scene removed the right
cuff and linked two pairs of handcuffs together to give Plaintiff additional space between his

wrists. Exhibit 3, pp. 65-66, 128.[3]

## ARGUMENT AND AUTHORITY

## PROPOSITION I

## DEFENDANT GODSIL HAD PROBABLE CAUSE
## TO ARREST PLAINTIFF MOORE

When Plaintiff ignored Officer Godsil's order to get out of the street and continued

to approach the police cars, he was arrested for violation of §30-68(a) of the Oklahoma City

Municipal Code, which makes it illegal to disobey a lawful command of any police officer

in the discharge of his or her duties.  This ordinance provides:

> Any person who interferes, obstructs, attempts to obstruct, or disobeys a lawful
> command of in police officer in the discharge of his/her duties, by any means
> other than by threat, intimidation, or force is guilty of a Class "a" offense.

Plaintiff does not dispute that Officer Godsil told him to get out of the street, and

warned him that he would be arrested if he failed to comply.  Exhibit 3, pp. 45-48.  Rather

than comply with this request, Plaintiff chose to argue about whether the street was part of

Plaintiff's property.  Exhibit 3, pp. 45-49.  Plaintiff was arrested when he walked back into

the street and towards Officer Burton's police car.

---

[3]Plaintiff Moore has not sued Officer Godsil for excessive force.  The only
allegations regarding handcuffing in the Petition relate to the negligence claim against the
City.  In these allegations, Plaintiff specifically alleges Officer Godsil was acting within
the scope of his employment and was negligent in handcuffing Plaintiff too tightly.  See,
Petition, ¶2, attached as Exhibit 7.

7

The Tenth Circuit upheld an arrest made under very similar circumstances in *United States v. Christian*, 190 Fed.Appx. 720, 2006 WL 2328749 (10th Cir. 2006).   In *Christian*, police officers observed several individuals, who they believed to be intoxicated, standing in a bank parking lot and decided to investigate.   While the police were checking the identification and records of these suspects, the defendant approached one of the officers and asked if he could ask a question.   *Christian* at *721.   The officer advised the defendant he was busy and said he would help if the defendant "could wait a minute."   Unhappy with that answer, the defendant approached a second officer and was again told to wait until the current investigation was finished.   Specifically, the second officer told the defendant he was obstructing the investigation and he needed to "go over there [an area approximately 30 feet away] right now" or he was "fixing to go to jail."   *Id.* at 722.   When the defendant instead continued towards the police officers, he was arrested for interference with a police officer under 21 O.S. §540.[4]   The Tenth Circuit found the arrest was supported by probable cause, stating:

> [W]e agree with the district court that the police had probable cause to arrest Mr. Christian for obstructing an officer. We note that the question before us is not whether he was *actually* obstructing or interfering (as Mr. Christian frames the issue), but rather whether an objectively reasonable officer could conclude that Mr. Christian was violating the Oklahoma statute. From that

---

[4]This statute provides:

Every person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor.

8

officer's perspective and based on the factual findings of the district court, Mr. Christian was becoming increasingly agitated and distracting the officers as they handled another situation where they were outnumbered. The officers repeatedly asked Mr. Christian to move away from the area and warned him that if he did not, he would be placed under arrest. Mr. Christian refused and continued towards the officers. A reasonable officer could have concluded at that time that Mr. Christian was interfering with their investigation, and as such, the officers had probable cause to arrest him. *Christian* at 723.

*Christian* relies on the Oklahoma case of *Trent v. State*, 1989 OK CR 36, 777 P. 2d 401. In *Trent*, highway patrol officers arrested a driver for DUI. The passenger was arrested and convicted for obstructing an officer under 21 O.S. §540, because she refused to leave the scene and repeatedly argued with the officer about whether the vehicle should be impounded. *Trent* at 402. The Oklahoma Court of Criminal Appeals upheld the conviction, finding that there is no requirement that a defendant use physical force against an officer before he may be charged with obstructing an officer; words alone may suffice to support a conviction for obstructing an officer. *Id.*

While *Christian* applies the Oklahoma state obstruction statute rather than the Oklahoma City municipal ordinance, the same rationale supports a finding of probable cause in the instant case. The relevant question is not whether Plaintiff Moore was in fact interfering with the police officers' ability to discharge their duties, but whether Officer Godsil reasonably believed Plaintiff Moore's actions were making it more difficult for the officers to safely and efficiently complete the first arrest. As Officer Godsil testified, he believed Plaintiff's presence in the road created a hazard for Plaintiff and anyone driving on the road. Exhibit 2, pp. 31-34. This potential hazard distracted the officers' focus from the

9

first arrest.

It is apparent from Plaintiff's deposition that he believes the constitutionality of his arrest turns on whether the road was located within the boundaries of Plaintiff's property. See, Exhibit 3,  pp. 45-48, pp. 118-119.  In other words, if he "owned" the street, he could not lawfully be ordered to stay out of the street.  This analysis is incorrect.  While the issues of who originally owned the land and maintained  the road  might be relevant in a quiet title or adverse possession action, they are not relevant in the instant case.  As the Tenth Circuit noted in *United States v. Sanchez*, 555 F. 3d 2009 (10th Cir. 2009), Oklahoma courts interpret the obstruction statute in a common-sense manner.  *Id.* at 919.  In the instant case, regardless of who had title to the land underneath it, East Madison was open to the public and being used as a public roadway;  Officer Godsil saw cars traveling on the road and around the police cars.  Exhibit 2, p. 19.   Therefore, it was reasonable for Officer Godsil to believe Plaintiff Moore was creating a traffic hazard and common sense dictated that he could alleviate this hazard by ordering Plaintiff out of the road.

In *Sanchez*, the defendant was standing in another person's driveway when police arrived to execute a search warrant at the house.  The defendant was ordered to get on the ground, but instead tried to flee. *Id.* at 912.  He was apprehended and arrested for obstruction of an officer under 21 O.S. §540.  The Tenth Circuit found probable cause existed for arrest, because the defendant's actions "unquestionably impeded the officers executing the search warrant."  *Id.* at 919.  Rather than conducting the search, the officers needed to chase and

10

apprehend the defendant. *Id.* The Tenth Circuit rejected the argument that an obstruction conviction requires a belligerent act directed at an officer. Instead, the broad view of obstruction recognized in *Trent* "clearly encompasses" flight. *Id.*

This court recently applied the analysis of *Sanchez* in the context of a §1983 action in *Koch v. City of Del City*, 2010 WL 1329819 (W.D. Okla. 2010). In *Koch*, the defendant police officer was dispatched to the plaintiff's residence, pursuant to a court order appointing a guardian ad litem, to check the welfare of an elderly woman who was previously in the plaintiff's care. When the plaintiff refused to tell the officer where the missing woman was, the plaintiff was arrested for obstruction. *Id.* at *3. The plaintiff filed suit, alleging she was arrested without probable cause. This court granted summary judgment to the defendant officer, finding the plaintiff's refusal to respond to questions about the missing woman, and attempt to retreat into her house to evade further questions, gave the defendant officer an objectively reasonable basis to conclude the plaintiff had committed the offense of obstructing an officer. *Id.* at *6. This court's decision was just affirmed by the Tenth Circuit in *Koch v. Del City*, _ F. 3d. ___, 2011 WL 5176164 (10th Cir. November 2, 2011).[5]

---

[5]Although Plaintiff's claim for negligent handcuffing in the instant case is brought against the City of Oklahoma City rather than Officer Godsil, Officer Godsil believes the Tenth Circuit's discussion of the handcuffing issue in *Koch* is very enlightening and therefore should be brought to the court's attention. As in the instant case, the plaintiff complained of abrasions and nerve damage. She sought medical treatment immediately after the handcuffing, and returned for a follow up visit "because she had a court appearance" and "needed a note saying she had radial nerve damage. *Id.* at *14. This is very similar to Plaintiff Moore's November 14, 2011 visit to his doctor, three days before the doctor was scheduled for deposition, to stress that his numbness began immediately

The Tenth Circuit also granted qualified immunity in a civil rights case arising out an obstruction charge in *Galleta v. Deasy*, 9 Fed.Appx. 909, 2001 WL 575431 (10th Cir. 2001). The arrest in *Galleta* was based on both a Colorado traffic statute and a Denver municipal ordinance. The latter, like the Oklahoma City ordinance in the instant case, made it illegal to disobey a lawful order of police. *Id.* at *910-911. The plaintiff in *Galleta* was stopped for a traffic violation and asked to produce his license. When plaintiff opened his wallet to produce the license, the defendant officer could see a second driver's license and asked to see that as well. When plaintiff refused to produce the second license, he was arrested for interference with a police officer and his wallet was searched incident to arrest. *Id.* at 910. The second license was simply a duplicate issued to plaintiff. The plaintiff asserted the defendant officer lacked probable cause for arrest because he did not have any reason to believe the second license was "an instrument of crime." The district court granted qualified immunity, finding the issue was not whether plaintiff was legally in possession of a second driver's license but whether it was reasonable for the defendant officer to believe he could require the plaintiff to produce this license. *Id.* at *915. Similarly, in the instant case, the relevant issue is not whether Plaintiff Moore was the technical owner of a portion of East

---

after the handcuffing. See, November 14, 2011 Medical Record attached as Exhibit 8; Deposition of Dr. Darin Stockton, pp. 40-41, 55-61 attached as Exhibit 9. Additionally, in *Koch*, as in the instant case, the plaintiff did not follow up on recommendations or referrals for further treatment. *Id.* Under these circumstances, the Tenth Circuit concluded the plaintiff's injuries were *de minimus* and granted summary judgment on the excessive force claim.

Madison Street but whether it was reasonable for Officer Godsil to believe he had the authority to order Moore to stay out of the road until the first arrest was concluded.

Although *Sanchez*, *Koch* and *Galleta* are not as factually similar to the instant case as *Christian*, they do demonstrate that the Tenth Circuit and Oklahoma courts construe obstruction statutes broadly to encompass a wide range of behavior, from fleeing a scene to refusing to leave a scene when requested, and from refusing to answer questions to interrupting an ongoing arrest with untimely questions. The relevant inquiry is whether, applying a common-sense perspective, the actions of an individual charged with obstruction made it more difficult for the police to safely and effectively discharge their duties. Plaintiff Moore was not involved in the original criminal activity at the convenience store, and it is clearly not his fault that the fleeing drug dealer was apprehended very close to his house. However, his refusal to wait a few minutes for the first arrest to be concluded and his decision to stand in the road and try to talk to the police officers involved in that arrest made an already tense and uncertain situation even more stressful. Consistent with *Christian, Trent, Sanchez, Koch,* and *Galleta*, it was reasonable for Officer Godsil to interpret Plaintiff's actions as interfering with the officers' investigation. Therefore, Officer Godsil is entitled to summary judgment on the §1983 claim for false arrest.

13

## PROPOSITION II

### DEFENDANT GODSIL IS ENTITLED
### TO QUALIFIED IMMUNITY

Even if this court were to conclude probable cause is lacking, however, summary judgment would still be appropriate on the alternative grounds of qualified immunity. As the Tenth Circuit recognized in *Serna v. Colorado Department of Corrections*, 455 F.3d 1146, 1150 (10th Cir.2006), qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.

When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Koch* at *5, citing *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir.2009). If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Koch* at *5, citing *Clark v. Edmunds,* 513 F.3d 1219, 1222 (10th Cir.2008). To assess whether the right was clearly established, this court asks if the right was sufficiently clear that a reasonable officer would understand that what he is doing violates that right. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. The relevant, dispositive inquiry in determining whether a right

14

is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation. *Mecham v. Frazier,* 500 F. 3d 1200, 1205-1206. (10th Cir. 2007).

As this court noted in *Koch,* "even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Id.* at *7, quoting *Cortez v. McCauley,* 478 F.3d 1108, 1114 (10th Cir.2007).   See also, *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 537, 116 L.Ed. 2d 589 (1991) (There is often more than one reasonable response to a given situation, and officers should not be liable because "another reasonable, or more reasonable, interpretation of the events can be constructed five years after the fact.") Additionally, where the facts are not disputed, whether an officer acted reasonably is a legal determination. *Mecham* at 1203. Although the reasonableness standard is inevitably fact dependent, it should not be reserved for the jury in the absence of disputed material facts. *Id.*

In the instant case, it is undisputed Plaintiff Moore entered the road to attempt to talk to Officer Burton about moving his car, after Officer Garrett had just asked him to wait a minute. It is undisputed Officer Godsil ordered Plaintiff to get out of the road and told him he would be arrested if he stayed in the road. It is undisputed Plaintiff did continue towards Officer Burton's car, and was arrested by Officer Godsil for interference with official process for failing to obey a lawful command. The reasonableness of Office Godsil's conclusion that he had probable cause to make this arrest is a question of law. Plaintiff may try to suggest other ways Officer Godsil or the other officers present could or should have responded to

15

Plaintiff's request to move the police car.  However, as *Hunter* makes clear, those alternative interpretations of the situation do not create a material question of fact regarding the reasonableness of Officer Godsil's conclusion that Plaintiff was in violation of §30-68(a)when Plaintiff ignored Officer Godsil's order to get out of the street.

In order to defeat a motion for qualified immunity, Plaintiff must establish that a reasonable officer would have understood Plaintiff had a clearly established right to stand in the road and attempt to talk to the officers, and that arresting Plaintiff for disobeying an order to get out of the street would violate his constitutional rights.  Defendant Godsil has found no authority establishing such a right, and does not believe any exists.  To the contrary, the case law discussed in Proposition I demonstrates that obstruction statutes should be construed broadly to enable the police to accomplish their duties without harassment or interruption.  A reasonable officer familiar with *Christian* and *Trent* would believe he had the authority to order Plaintiff to get out of road and order Plaintiff to wait until the first arrest was completed before trying to seek assistance from the officers at the scene.  Even if this court believes Officer Godsil made a mistake in applying §30-68(a), this mistake was reasonable under *Christian, Trent, Sanchez, Koch* and *Galleta.*  Therefore, Officer Godsil is entitled to summary judgment on the grounds of qualified immunity.

Respectfully submitted,


/s/ Stacey Haws Felkner
Stacey Haws Felkner, OBA #14737
Manchester & Knight, PLLC
One Leadership Square, Suite 800 N
211 North Robinson
Oklahoma City, Oklahoma, 73102
Telephone: (405)235-4671
Facsimile: (405)235-5247
Attorney for Defendant Oklahoma City Police
Officer Daniel Godsil

## CERTIFICATE OF MAILING

This is to certify that on this 1st day of December, 2011, a true and correct copy of the above and foregoing was served on the following, who are registered participants of the ECF System:

Rex D. Brooks
1904 N.W. 23rd Street
Oklahoma City, OK 73106

Richard C. Smith
Assistant Municipal Counselors
200 North Walker, Suite 400
Oklahoma City, OK 73102

/s/ Stacey Haws Felkner
Stacey Haws Felkner

17