IN THE UNITED STATES COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WESLEY T. MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | CASE NO. 5:11-cv-00086-M |
| | ) | |
| | ) | |
| CITY OF OKLAHOMA CITY | ) | |
| AND DANIEL GODSIL, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS RESPONSE
TO DEFENDANT GODSIL'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF AUTHORITIES

*Group v State*, 1951 OK CR 140, 236 P2d 997, page 1002. . . . . . . . . . . . . . . . . . . . . . . 11

*People v Losinger*, 63 Misc. 2d 577, 313 NYS 2d 60 (City Ct 1970), page 63. . . . . . . . 9

*State v Cook*, 1983 OK CR 59, ¶ 4, 663 P2d 20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*State v Ludlow*, 28 Utah 2d 434, 503 P2d 1210 (1972), page 1210. . . . . . . . . . . . . 9,13

*City of Charleston v Mitchell*, 234 SC 376, 123 SE 2d 512 (1961, page 521 . . . . . . . . 8

*City of Columbus v Bouie*, 239 SC 570, 124 SE 2d 332 (1962), page 333. . . . . . . . . . 9

*City of Columbus v Waterman*, 41 Ohio App 2d 98, 322 NE 2nd 291 (1974) page 293-295 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*City of Hamilton v Hamm*, 33 Ohio App 3d 175, 514 NE 2d 942 (1986), page 176. . . 9

*Engles v State*, 293 So 2nd 105 (Fla App 1974), page 106. . . . . . . . . . . . . . . . . . . . . . 9

*Fisher v City of Las Cruces*, (10th Cir NM 2009), 584 F3d 888, page 897. . . . . . . 17,18

*Fogarty v Gallegos*, 523 F3d 1147 (10th Cir NM 2008), page 1155-1156. . . . . . . . 16,18

*Fourth Amendment to the U. S. Constitution* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Koch v City of Del City, 10th Cir Okla 2011, 660 F3d 1228, page 1238.* . . . . . . . . . 15,16

*Kopec v Tate*, (3rd Cir Pa 2004) 361 F3d 772, page 777 . . . . . . . . . . . . . . . . . . . . . . . 19

*Lundstrom v Romero*, 10th Cir NM 2010, 616 F3d 1108, page 1119 . . . . . . . . . . . . . 19

*Modisett v Marmaduke*, 1964 OK CR 76, ¶ 13, 394 P2d 541 . . . . . . . . . . . . . . . . . . . 11

**Oklahoma City Ord. § 30-68 (a)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Oklahoma City Ordinance, Ord § 1-6 (c)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Oklahoma City Ordinance, Ord § 32-126 (a) and (c)* . . . . . . . . . . . . . . . . . . . . . . . .  14

*Oklahoma City Ordinance, Ord § 32-455 (a)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10


*Oklahoma City Ordinance, Ord § 32-457* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Oklahoma City Ordinance, Ord § 32-457 (b)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Oklahoma City Ordinance, Ord § 33-63 (l)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Oklahoma City Ordinance, Ord § 33-63 (r)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Oklahoma City Ordinance, Ord § 38-68 (a)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Oklahoma City Ordinance, Ord. §32-304* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Overall v State ex rel Dept. of Public Safety*, 1995 OKCIVAPP 107, ¶ 29, 910 P2d  1087
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*People v Stoudt*, 198 Ill App 3d 124, 555 NE 2nd 825 (1990), page 827 . . . . . . . . . . . .  7

*Roberts v City of Stillwater*, 1982 OK CIV APP 9, ¶ 9, 646 P2d 6.   . . . . . . . . . . . . .  13

*Roberts v Okla. Dept. Of Corrections*, 2002 OK 36, ¶8, 54 P3d 106 . . . . . . . . . . . . . .  11

*St. John v Hickey*, (6th Cir Ohio 2005), 411 F3d 762, page 772-773. . . . . . . . . . . . . . .  18

*State ex rel Wilmoth v Gustke*, 179 W Va 771, 373 S E 2d 484 (1988), page 487  . . . .  9

*State v Wiedenhoft*, 27 P3d 873 (Id.Ct.App 2001), page 875.  . . . . . . . . . . . . . . . . . . .  7

*Tate v West Norriton Township*, (ED Pa. 2008), page 488.  . . . . . . . . . . . . . . . . . . . . .  18

*Title 47 O. S. § 11-1003 (A) (2) and (12)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Wilson v Kittoe*, 337 F3d 392 (4th Cir Va 2003), page 397 . . . . . . . . . . . . . . . . . . . . . .  16

**PLAINTIFF'S RESPONSE TO DEFENDANT GODSIL'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff and for his response to the Defendant Godsil's Motion

for Summary Judgment, alleges and states:

1. Plaintiff does not dispute the allegations of fact contained in Defendant's Fact

No. 1.

2.  Plaintiff does not dispute the allegations of material fact contained in

Defendant's statement of material fact No. 2, but states that not all of the facts alleged are

material.

3. Plaintiff does not dispute the allegations of fact contained in Defendant's Fact

No. 3, but states that not all of the facts alleged are material.

4. Plaintiff does not dispute the allegations of fact contained in Defendant's Fact

No. 4.

5. Plaintiff does not dispute the allegations of fact contained in Defendant's Fact

No. 5.

6.  Plaintiff disputes the allegations of fact contained in Defendant's Fact No. 6, to

the extent that the language used suggests that Plaintiff's mother could have exited the

driveway.  Plaintiff's Exhibit 1, Plaintiff's Depo., page 30 line 25 - page 31 line 4.

Maxine's Depo., page 19 line 17 - page 20 line 12.

7. Plaintiff disputes the allegations of fact contained in Defendant's Fact No. 7,

Plaintiff did not ask the officer in the street to pull officer Burton's car up, he asked him if

the officers could pull up so his mother could exit her driveway.  Plaintiff's Exhibit 1,

Plaintiff's Depo., page 50 lines 4-24, page 90 line 22 - page 91 line 1 and page 91 lines 9-

12.

8. Plaintiff disputes the allegation of fact contained in Defendant's Fact No. 8.

Plaintiff's mother did wait a few minutes while the officers visited with each other and

ignored Plaintiff and his mother's need to exit the driveway.   Plaintiff's Exhibit 1,

Plaintiff's Depo., page 50 lines 4-24, page 90 line 22 - page 91 line 1 and page 91 lines 9-

12 and Plaintiff's Exhibit 4, Desirae's Depo., page 13 lines 12 - 16.

9.  Plaintiff disputes the allegations of fact contained in Defendant's Fact No. 9.

Plaintiff's mother did wait a few minutes while the officer's visited with each other and

ignored her need to exit the driveway.  Plaintiff's Exhibit 1, Plaintiff's Depo., page 50

lines 4-24, page 90 line 22 - page 91 line 1 and page 91 lines 9-12.

10.  Plaintiff disputes the allegations of fact contained in Defendant's Fact No. 10

to the extent that it alleges that Plaintiff was blocking the traffic.  Plaintiff does not dispute

the balance of the allegation of fact contained in Defendant's Fact No. 10.   Plaintiff's

Exhibit 1, Plaintiff's Depo., page 30 line 25 - page 31 line 8 and Plaintiff's Exhibit 3,

Maxine's Depo., page 15 lines 1 - 4, page 19 line 12 - page 20 line 12.

11.  Plaintiff disputes the allegations of fact contained in Defendant's Fact No. 11

to the extent that it contains allegations other than that Defendant ordered Plaintiff out of

the roadway.  Plaintiff's Exhibit 1, Plaintiff's Depo., page 47 lines 9 - 25; page 48 line 13

- 20 and page 49 line 1 - 18.

12.   Plaintiff does not dispute the allegations of fact contained in Defendant's Fact No. 12.

13.   Plaintiff does not dispute the material allegations of fact contained in Defendant's Fact No. 13.

14.   Plaintiff disputes the material allegations of fact contained in Defendant's Fact No. 14 to the extent that Defendant alleges that he did anything to make sure the handcuffs were not on too tight.  Plaintiff's Exhibit 1, Plaintiff's Depo., page 65 line 17 - page 66 line 10 and page 70 line 21 - page 71 line 6.


**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT GODSIL'S MOTION FOR SUMMARY JUDGMENT**

**PROPOSITION I:   DEFENDANT GODSIL'S ORDER TO PLAINTIFF TO GET BACK ON HIS PROPERTY WAS NOT A VALID ORDER, WHICH DEFEATS OFFICER GODSIL'S CLAIM OF PROBABLE CAUSE TO ARREST PLAINTIFF**

Defendant Godsil rests his Motion for Summary Judgment on his assumption that his order to the Plaintiff to get back on his property was a lawful order, the disobedience of which gave him probable cause to arrest the Plaintiff.   Defendant Godsil allegedly arrested Plaintiff for interfering with official process - disobeying a lawful command. Defendant Godsil testified that the interference with official process was Plaintiffs failure to obey Defendant Godsil's order to Plaintiff to get out of the street.  Plaintiff's Exhibit 2,

Godsil Depo., page 17 line 16 - page 18 line 5, lines 21 - 25.

**Oklahoma City Ord. § 30-68 (a)**, which provides:

> "(a) Any person who interferes, obstructs, attempts to obstruct,
> or disobeys a lawful command of any police officer in the
> discharge of his/her duties, by any means other than by threat,
> intimidation, or force is guilty of a Class "a" offense."

This ordinance requires, at a minimum, that the officer's order must be made in
the discharge of his duties.   Defendant Godsil's order is lawful, therefore, only if it is
given while acting in his capacity as a police officer and is given in the course of carrying
out law enforcement activities or duties.  Otherwise, his orders are no more enforceable
than the orders of a private citizen.  In Oklahoma, an individual has not violated the law
when he refuses to obey an order which is contrary to law, whether it be statute or
constitution. ***Overall v State ex rel Dept. of Public Safety***, 1995 OKCIVAPP 107, ¶ 29,
910 P2d  1087 and ***State v Wiedenhoft***, 27 P3d 873 (Id.Ct.App 2001), page 875.  Further,
in Oklahoma, an individual has the right to resist an unlawful arrest.  ***State v Cook***, 1983
OK CR 59, ¶ 4, 663 P2d 20.

The following citations of authority clearly show the law throughout the United
States is that it is not a crime to disobey an unlawful order and that lawful orders are only
those orders given by a police officer in the course of carrying out his law enforcement
duties.  It is clear the order given by Defendant Godsill to Plaintiff in the case at bar was
not lawful.

In ***People v Stoudt***, 198 Ill App 3d 124, 555 NE 2nd 825 (1990), page 827, it was

held by the Court that resisting or obstructing a peace officer requires proof that the peace officer was performing an authorized act within his official capacity.  In that case, it was held that an order to the defendant to get out of the street was not a lawful order.  ***City of Columbus v Waterman***, 41 Ohio App 2d 98, 322 NE 2nd 291 (1974) page 293-295, held that a person has a right to be on a public street and sidewalk and where there was no disturbance and the arrest of the third person was complete, except officers were completing their paperwork, failure to immediately obey a police officer is not ipso facto obstructing the officer.   In the case at bar, the arrest of the third party criminal had already been accomplished and at best Officer Burton was completing a supplemental report, according to Defendant Godsil.  According to the Plaintiff, Defendant Godsil and Officer Burton were just visiting and joking around.   There was certainly no evidence that the circumstances caused Officer Burton to block Plaintiff's mother's driveway to complete his report.  In fact, he had the whole street in which to do so.   Plaintiff's Exhibit 1, Plaintiff's Depo., page 35 lines 14 - 18; page 42 lines 6 - 13; page 43 lines 18 - 21 and page 50 lines 16 - 20.

Further, Defendant Godsil did not give Plaintiff sufficient time to obey his order return to his property.   Plaintiff's Exhibit 1, Plaintiff's Depo., page 45 line 10 - page 48, line 25.   Refusing or a momentary delay to obey an order to leave a store in which defendant was trespassing was not interference with an officer in discharging his official duties. ***City of Charleston v Mitchell***, 234 SC 376, 123 SE 2d 512 (1961, page 521 and

*City of Columbus v Bouie*, 239 SC 570, 124 SE 2d 332 (1962), page 333.

It was not a valid arrest where owner of bar was arrested after asking a police officer to continue his investigation of a minor outside the bar and refusing to obey order of police officer to go into a package store with the officer and arrestee. *Engles v State*, 293 So 2nd 105 (Fla App 1974), page 106.  Defendant had a right to refuse to sign a tendered agreement to pay a fine.  *City of Hamilton v Hamm*, 33 Ohio App 3d 175, 514 NE 2d 942 (1986), page 176.  Employer had a right to refuse to produce employee outside his business to be served process during work hours, except for lunch or coffee break. *State v Ludlow*, 28 Utah 2d 434, 503 P2d 1210 (1972), page 1210.  Owner of a business had a right to ask the officer, writing a traffic ticket on his business premises, to leave his parking lot and officer had no right to arrest him for alleged offense of  interfering with officer.  *State ex rel Wilmoth v Gustke*, 179 W Va 771, 373 S E 2d 484 (1988), page 487. The duty to obey a police officer encompasses only those lawful and authorized acts within the officer's official capacity and a mere inconveniencing traffic or pedestrians is not enough to support an arrest.  *People v Losinger*, 63 Misc. 2d 577, 313 NYS 2d 60 (City Ct 1970), page 63.

Defendant Godsill further tries to justify his arrest by indicating Plaintiff was violating the law as a pedestrian by being in the roadway obstructing traffic and by not walking facing traffic on the roadway. Deposition page 29 lines 4 - 6, page 30 lines 14 - 21, page 31 lines 2 - 22.

***Oklahoma City Ordinance, Ord § 32-457 (b)*** provides:

> "(b) Pedestrian walking along and upon a roadway, street or
> highway shall when practicable walk only on the left side of
> the roadway or its shoulder facing traffic which may approach
> from the opposite direction."

Defendant's assertion that Plaintiff was violating Ord § 32-457, which he claims gave him the right to order Plaintiff back on his property cannot be supported. Defendant makes no attempt to show that there was another practicable way to cross the street to approach Officer Burton's car to ask him to move his vehicle up a little bit so Plaintiff's mother could exit her driveway. Plaintiff's Exhibit 2, Godsil's Depo., page 31 lines 3 - 9. Further, the Oklahoma City Ordinances allow a pedestrian to cross a street, as long as he yields the right of way to approaching vehicles. ***Oklahoma City Ordinance, Ord § 32-455 (a).***

Defendant does not claim that Plaintiff failed to yield the right of way to an approaching vehicle while he was crossing the street to ask Officer Burton to move his car a little bit. Plaintiff's Exhibit 2, Godsil's Depo., page 30 line 11 - page 31 line 16. Nor does Defendant Godsil claim that there was any traffic using the street at any time during this entire event or that Plaintiff actually interfered with or impeded any traffic. Plaintiff's Exhibit 2, Godsil's Depo., page 23 line 20 - page 24 line 7.

If Defendant Godsil had made an investigation when Plaintiff told him that he was on his property, he would have found out that the reason Plaintiff thought he was on his property was because, he had been deeded, not only the lot on which his house was on but

10

the property extending across the street, including eight feet on the South side of the street.  Plaintiff's Exhibits 8, 9, 10, 11, 12, 13, 15, 16 and 17.   Defendant Oklahoma City was deeded the roadway that is Madison in February, 1955.  Plaintiff's Exhibit 14, but Plaintiff's father and uncle were the persons who paved the street.  The City had never done any improvements on the road or expressed any other interest in the upkeep of the street in front of Plaintiff and his mother's homes.   But for the fact that statute of limitations do not run against government entities, the street would have been owned by Plaintiff by prescription.

These alleged reasons were grabbing at straws in an attempt to justify Plaintiff's arrest.  Plaintiff's failure to walk facing traffic, even if true, is only a violation if doing so would have been practical.  Clearly, it would have been impractical to walk facing traffic while walking across the street.  Criminal statutes are strictly construed and cannot be extended to include or embrace conduct not clearly included within the prohibition of the statue and further the alleged criminal act must violate both the letter and spirit of the penal statute.  *Roberts v Okla. Dept. Of Corrections*, 2002 OK 36, ¶8, 54 P3d 106, citing *Modisett v Marmaduke*, 1964 OK CR 76, ¶ 13, 394 P2d 541 and *Group v State*, 1951 OK CR 140, 236 P2d 997, page 1002.

In the case at bar, there was no evidence that Plaintiff was violating any law and there was no evidence to suggest that Plaintiff was belligerent, menacing, threatening, interfering with the arrest or investigation of the third party criminal or in any other

11

manner interfering with the police on the scene.   Neither was there any evidence that Plaintiff was in fact obstructing traffic or had put himself in any danger or endangering drivers of any vehicles using the street.  All he did was politely ask the officers to please move their car up a short distance so that his mother could exit her driveway.  After the Officer in the street failed to ask Officer Burton to move his car, Plaintiff merely entered the street to ask Officer Burton himself, if he would move his car up a little.  This was not a violation of law nor was it interfering with any of the police officers.  Further, Defendant Godsil did not charge him with obstructing traffic or failure to walk against traffic. Plaintiff's Exhibit 1, Plaintiff's Depo., page 60 lines 1 - 17.

On the other hand, Defendant admits that Officer Burton was violating a city ordinance by parking in a traffic lane, yet he did not ask Officer Burton to move his car because it was only going to be a short obstruction of traffic; and he does not routinely do that.  Plaintiff's Exhibit 2, Godsil's Deposition page 31 line 23 - 32 line 22.  Further, it is made even more clear that Plaintiff was not actually violating any law because he was talking to Officer Garrett, who was on the street at the same time, and Officer Garrett did not see any reason to order Plaintiff off the street or to arrest him.  Plaintiff's Exhibit 2, Godsil's Depo., page 33 line 20 - page 34 line 20.

These facts clearly show that no reasonable officer could reasonably have thought Plaintiff was violating a law or interfering with a police officer in his official capacity.  If in fact, Defendant Godsil truly thought that Plaintiff was violating a city ordinance by

being on the street, the logical course of action would have been to write Plaintiff a ticket for violating that ordinance.  The fact that he did not do so clearly shows that Defendant Godsil didn't truly believe that Plaintiff was violating a city ordinance.  If he truly believed that Plaintiff was violating a city ordinance, he would have given him a ticket for that infraction.  ***Roberts v City of Stillwater***, 1982 OK CIV APP 9, ¶ 9, 646 P2d 6.

The only reasonable course of action that Defendant could have taken, assuming arguendo that every fact he uses to justify his arresting Plaintiff as true, would have been to simply write Plaintiff a ticket.  If he had done so, this entire case would have been totally unnecessary.  Plaintiff's Exhibit 7, Dan Montgomery Report, page 7.  ***State v Ludlow***, Utah, supra.

Under the provisions of ***Oklahoma City Ordinance, Ord § 1-6 (c)***, the penalty for a class "a" offense is a maximum fine of $500.00, no jail.  The offense of failure to walk against traffic under ***Oklahoma City Ordinance, Ord § 32-457*** is a class "a" misdemeanor with a maximum penalty of a fine of $84.00 pursuant to ***Oklahoma City Ordinance, Ord § 33-63 (r)***.  The offense of Interfering with Official Process or failure to Obey a Police Officer under ***Oklahoma City Ordinance, Ord § 38-68 (a)*** is a class "a" misdemeanor with a fine of $114.00, no jail pursuant to the provisions of ***Oklahoma City Ordinance, Ord § 33-63 (l)***.  This demonstrates that the alleged crimes involved in this case are the least serious of misdemeanors.

The policy of Oklahoma City is for the police officers to write tickets rather than

making arrests as expressed in **Oklahoma City Ordinance, Ord § 32-126 (a) and (c)**, which directs the defendant when and where to present the ticket.  The alleged offenses are the least of misdemeanors.  There was no just cause or probable cause to arrest the Plaintiff and cart him off to jail.  This is standard policy through out the country. Plaintiff's Exhibit 7, Dan Montgomery Expert Report, page 6.

The only violation of law that occurred in this case was that by Officer Burton.  He stopped his car beside a parked vehicle at the curb and blocked Ms. Moore's driveway. Plaintiff's Exhibit 2, Godsil's Depo., page 32 line 19 - page line 15 and page 36 line 25 - page 37 line 2; page 21 line 3 - page 22 line 3 and page 26 lines 24-25..

> **Title 47 O. S. § 11-1003 (A) (2) and (12)**, which provide:
>
> > "A.   Except as otherwise provided in subsection B *(not applicable to this case)* of this section, no person shall stop or park a vehicle, except when necessary to avoid conflict with other traffic or in compliance with law or the directions of a police officer or traffic-control device, in any of the following places:
> > (1)  ***;
> > (2).  In front of a public or private drive; ****
> > (12) On the roadway side of any vehicle stopped or parked at the edge or curb of a street; ***."

**Oklahoma City Ordinance, Ord. §32-304**, provides the same proscription of parking in front of a public or private drive or on the roadway side of any vehicle stopped or parked at the curb of the street.

It is clear that Plaintiff was arrested because he was asking the police officer to obey the law, by not blocking his mother's driveway, and trying to prevent his mother

14

from damaging her own car or one of the officer's cars.  This case falls clearly into one of those cases of contempt of cop which Plaintiff's expert states is clearly unprofessional and not justified by law.  Plaintiff's Exhibit 7, Dan Montgomery Expert Report, page 7.


**PROPOSITION II:**          **DEFENDANT GODSIL IS NOT ENTITLED TO THE  DEFENSE OF QUALIFIED IMMUNITY**

    **A.**    **Defendant Godsil's Arrest of the Plaintiff was without Probable Cause and  A Violation of Plaintiff's Constitutional Rights under the Fourth amendment to the Constitution.**

Where qualified immunity is raised by the Defendant in a Motion for Summary Judgment, the burden shifts to the Plaintiff to show:  (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established.  Once Plaintiff meets this threshold of proof, the defendant is then required to prove that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.  ***Koch v City of Del City,*** 10th Cir Okla 2011, 660 F3d 1228, page 1238*.*

In the case at bar, the evidence clearly shows that Defendant Godsil violated Plaintiff's constitutional rights under the ***Fourth Amendment to the U. S. Constitution***, which provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not the violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

As shown under Proposition I, the arrest of Plaintiff in this case was unlawful because there was no probable cause shown to arrest Plaintiff.  It was a false arrest.  There is no question in the case at bar that Plaintiff has met his burden of showing a violation of his constitutional rights.  An arrest is reasonable only if it is supported by probable cause and when an arrest has been made without probable cause, it is a violation of the Fourth Amendment.  *Id.*  Police officers may not ignore easily accessible evidence and thereby delegate their duty to investigate and make an independent probable cause determination based on the investigation.  *Id. 1240.*      Probable cause exists only if under the circumstances within the police officer's knowledge and of which he has reasonably trustworthy information are sufficient within themselves to justify a man of reasonable caution to believe that an offense has been or is being committed.  The court makes this determination based upon its own independent and objective analysis as the officer's subjective reason for the arrest is irrelevant and whether arrestee is later charged with a crime or not. *Fogarty v Gallegos*, 523 F3d 1147 (10th Cir NM 2008), page 1155-1156. See *Wilson v Kittoe*, 337 F3d 392 (4th Cir Va 2003), page 397.  In that case the individual refused to obey three officer's orders to leave the scene, which was not sufficient to justify an arrest. *Id.* page 400.

In the case at bar, Defendant Godsil did not make any investigation.  Plaintiff's Exhibit 2, Godsil's Depo., page 29 line 19 - page 3- line 2.  A simple investigation would have revealed that Plaintiff was only requesting the officers to move the police car up a

little so that it would no longer be blocking his mother's driveway. There was no riot,

immediate emergency or other exigent circumstances that would excuse Defendant

Godsil's failure to investigate the matter before making the arrest. A simple investigation

would have revealed that Plaintiff was no threat to society, that he owned the property on

which he lived, that he had the same job for over 25 years, that he had no criminal history,

not even an arrest record or traffic citation. Plaintiff's Exhibit 1, Plaintiff's Depo., pages 7

- 16. Defendant could observe for himself that Plaintiff was not violent, abusive,

indecent, profane, unreasonably loud or otherwise disorderly. Plaintiff's Exhibit 2,

Godsil's Depo., page 39 lines 2 - 10; page 45 lines 18 - 24; page 47 lines 9 - 21; page 48

line 23 - page 49 line 16; page 49 line 23 - page 50 line 1; page 50 lines 13 - 17; page 56

lines 18 - 22 and Plaintiff's Exhibit 7, Dan Montgomery Expert Report, page 7.

**B.      Defendant Godsil used Unnecessary Force after the Arrest in Violation
         of his Constitutional Rights under the Fourth Amendment to the
         Constitution.**

In the course of arresting Plaintiff, Defendant Godsil applied the handcuffs too

tight or failed to apply the locking device, causing injury to the Plaintiff, after Plaintiff

repeatedly notified Defendant that the cuffs were on too tight and he was in pain. This

constitutes excessive force in violation of the Fourth Amendment to the Constitution.

***Fisher v City of Las Cruces***, (10th Cir NM 2009), 584 F3d 888, page 897. The injury

alleged must be non deminimis whether physical or emotional, but it does not have to be

evidenced by visible cuts, bruises, abrasions or scars. ***Id.*** 897-898. Whether the injury is

17

de minimis is for the jury. *Id.* 899.   See also *St. John v Hickey*, (6th Cir Ohio 2005), 411 F3d 762, page 772-773.

In the case at bar, the Plaintiff's injuries were greater than de minimis.  Plaintiff's Exhibit 6, Dr. Stockton's Depo., page 15 line13 - page 16 line 17; page 23 lines 7 - 15; page 24 line 17 - page 25 line 23; page 28 line 16 - page 29 line 4; page 58 line 9 - page 59 line 17, page 59 line 25 - page 60 line 10, lines 7 - 18; page 72 line 21 - page 73 line 11 and Plaintiff's Exhibit 5, PA Cardello's Depo., page 17 lines 16 - 20.

The inquiry for the court is whether the force used by the police officer was reasonable under the circumstances.  The material facts and circumstances are the severity of the crime, whether suspect poses an immediate threat to safety of officer or others and whether suspect is actively resisting the arrest.  *Fogarty v Gallegos*, 10th Cir NM 2008, supra., page 1159.  Like wrongful arrest, the analysis is an objective one to be judged from the perspective of a reasonable officer on the scene and the force least justified is that against a non-violent misdemeanant who does not flee or actively resist the arrest.  *Id.* 1159-1160.   Where the arrest itself is unlawful, any force applied in the course of the arrest is ordinarily unlawful as well.  *Tate v West Norriton Township*, (ED Pa. 2008), 545 F. Supp. 2d 480 page 488.    The Fourth Amendment right to be free of excessive force during  an arrest includes not to be locked into excessively tight handcuffs after the officer is repeatedly notified of the painful situation.  *Id.* page 489.   An officer cannot justify his failure to respond promptly to an arrestee's complaints of pain and repeated notifications

that handcuffs are too tight, at least to ascertain whether the handcuffs are in fact too tight. Especially in benign circumstances where officer is not in the midst of a dangerous situation involving a serious crime or armed criminal. *Kopec v Tate*, (3rd Cir Pa 2004) 361 F3d 772, page 777. A reasonable officer would know that using excessive force in the course of handcuffing would violate the Fourth Amendment to the Constitution. *Id.*, page 778.

   In the case at bar, Plaintiff was grabbed and pushed up against the police officer's car. Plaintiff's Exhibit 1, Plaintiff's Depo., page 62 lines 16 - 21. Plaintiff notified Defendant Godsil that his handcuffs were too tight and painful to him and Defendant Godsil refused to loosen them. Plaintiff's Exhibit 1, Plaintiff's Depo., page 65 line 17 - page 66 line 10; page 70 line 21 - page 71 line 6; page 86 lines 1 - 14; page 127 line 19 - page 128 line 18. Defendant knew that applying handcuffs would cause injury to Plaintiff. Plaintiff's Exhibit 2, Godsil's Depo., page 51 lines 10 - 16; page 53 lines 21 - 22; page 51 line 17 - page 52 line 2; page 54 lines 5 - 6; page 53 lines 5 - 15 and page 56 lines 2 - 10.

   Where there are disputed issues of material fact, the defense of qualified immunity is a question that is to be submitted to a jury. *Lundstrom v Romero*, 10th Cir NM 2010, 616 F3d 1108, page 1119. Handcuffing itself is a violation of the Fourth Amendment if it is done without probable cause. *Id*. 1123. When an individual is unreasonably arrested, handcuffing is a continuation of that illegal arrest. **Id.** 1125.

It is clear in the case at bar, that the arrest of Plaintiff was unlawful because of the lack of probable cause to believe that Plaintiff was committing an offense in the presence of Defendant Godsil and the handcuffing amounted to unnecessary force by refusing to loosen the handcuffs when he was notified that they were too tight.  It is also clear in the case at bar that the handcuffs were not properly applied.  Plaintiff's Exhibit 7, Dan Montgomery Expert Report, pages 8-9.

Plaintiff asks the Court to summarily overrule Defendant Godsil's Motion for Summary Judgment.

Respectfully submitted this 5th day of January, 2012.


S/ Rex D. Brooks
REX D. BROOKS          OBA # 1165
Attorney for the Plaintiff
1904 N. W. 23rd Street
Oklahoma City, OK 73106
Phone No.  (405) 525-2200
FAX No.   (405) 525-2214
E-mail   brookslaw@coxinet.net

## CERTIFICATE OF SERVICE

I certify that on January 5, 2012, I electronically transmitted the above attached

document to the Clerk of Court using the ECF System for filing.  Based on the records

currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the

following ECF Registrants:


Richard C. Smith OBA # 8397
Assistant Municipal Counselor
200 North Walker, Suite 400
Oklahoma City OK 73102
Telephone: (405) 297-2451
Facsimile: (405) 297-3851
rick.smith@okc.gov
**ATTORNEY FOR THE DEFENDANT CITY OF OKLAHOMA CITY**

Susan Ann Knight   OBA# 14594
Stacey Haws Felkner OBA# 14737
211 North Robinson Avenue, Suite 800N
Oklahoma City OK 73102
Telephone (405) 235-4671
Facsimile (405) 235-5247
susanannknight@gmail.com
sfelkner@fentonlaw.com
**ATTORNEYS FOR DEFENDANT DANIEL GODSIL**


                                        S/ Rex D. Brooks