IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WESLEY T. MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. CIV-11-86-M |
| v. | ) | |
| | ) | |
| CITY OF OKLAHOMA CITY and | ) | |
| DANIEL GODSIL | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY OF DEFENDANT GODSIL TO PLAINTIFF'S RESPONSE
TO GODSIL'S MOTION FOR SUMMARY JUDGMENT**

"With the benefit of hindsight, one might have hoped for a different resolution" of this situation. *Mecham v. Frazier*, 500 F. 3d 1200, 1205 (10th Cir. 2007). However, the presentation of a hypothetical "better" alternative to arrest is not sufficient to defeat Officer Godsil's motion for summary judgment on the grounds of qualified immunity. As the Supreme Court explained in *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 537, 116 L.Ed. 2d 589 (1991), the relevant question in deciding a claim for qualified immunity is whether an officer acted reasonably under settled law in the circumstances, not whether another reasonable, or even more reasonable, interpretation of the events can be constructed after the fact. *Id.* at 537. Moreover, the reasonableness standard does not require an officer to use the least intrusive means possible to handle a situation. *Medina v. Cram*, 252 F. 3d 1124, 1133 (10th Cir. 2001).

What is the settled law with respect to an arrest for what Plaintiff characterizes as "the least serious of misdemeanors"[1] such as a traffic law or a municipal ordinance? The opinion of

---

[1] *See*, Plaintiff's Brief in Support of His Response to Defendant Godsil's Motion For Summary Judgment at p. 13.

Plaintiff's expert that the only reasonable course of action open to Officer Godsil was to "simply write Plaintiff a ticket"[2] notwithstanding, controlling Supreme Court precedent clearly establishes that if an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender. *Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2004). *See* also, *Virginia v. Moore*, 553 U.S. 164, 128 S.Ct. 1598, 1605, 170 L.Ed.2d 559 (2008).

This rule applies even where the arrestee was a long-standing and law abiding member of the community who posed "no threat to society." In *Atwater*, the plaintiff was pulled over, arrested, handcuffed, and taken to jail because she and her children were not wearing seatbelts. *Id.* at 1538. She filed a §1983 suit against the City and the arresting officer alleging a violation of her Fourth Amendment rights. Although recognizing a citation would probably have been sufficient, and that the officer may have exercised poor judgment in making an arrest, the Supreme Court declined to find a Fourth Amendment violation or craft a special rule for minor offenses punishable only by a fine. As *Atwater* holds:

> If we were to derive a rule exclusively to address the uncontested facts of this case, Atwater might well prevail. She was a known and established resident of Lago Vista with no place to hide and no incentive to flee, and common sense says she would almost certainly have buckled up as a condition of driving off with a citation. In her case, the physical incidents of arrest were merely gratuitous humiliations imposed by a police officer who was (at best) exercising extremely poor judgment. . . .But we have traditionally recognized that a responsible Fourth Amendment balance is not well served by standards requiring sensitive, case-by-case determinations of government need, lest every discretionary judgment in the field be converted into an occasion for constitutional review. Often enough, the Fourth Amendment has to be applied on the spur (and in the heat) of the moment, and the object in implementing

---

[2]*See*, Plaintiff's Brief at p. 13, citing Report of Dan Montgomery at p. 7.

its command of reasonableness is to draw standards sufficiently clear and simple to be applied with a fair prospect of surviving judicial second-guessing months and years after an arrest or search is made. . . .For all these reasons, Atwater's various distinctions between permissible and impermissible arrests for minor crimes strike us as very unsatisfactory lines to require police officers to draw on a moment's notice. (Quotations and citations omitted) *Atwater* at 1553.

The Tenth Circuit applied *Atwater* in the recent case of *Howards v. McLaughlin*, 634 F.3d 1131 (10th Cir. 2011). In *Howards*, Vice President Chaney made a public appearance at Beaver Creek Mall in Colorado. The plaintiff was present at the mall, and made derogatory statements to and about Vice President Chaney. While speaking to the Vice President, the plaintiff touched the Vice President's shoulder, but later denied making physical contact. One of the defendant agents questioned plaintiff about the purported assault and according to the plaintiff "became visibly angry" when the plaintiff shared his opinions about the war in Iraq. *Id.* at 1137. The plaintiff was arrested for assault on the Vice President, but the charges were subsequently dismissed. *Id.* at 1138. The defendant agents sought summary judgment on the Fourth Amendment claim, arguing that even if there was no probable cause to believe an actual assault occurred, they had probable cause to arrest the plaintiff under 18 U.S.C. §1001 for making a false statement when he denied touching the Vice President. *Id.* at 1141. The Tenth Circuit granted summary judgment, despite the plaintiff's argument that the reliance on §1001 was an "after the fact justification" for an improper arrest. As long as probable cause exists to arrest on any charge, the subjective intent of the arresting officer is irrelevant. *Id.* at 1143. Thus, *Howards* states:

> Mr. Howards tries to bolster his Fourth Amendment claim by suggesting that the 18 U.S.C. § 1001 violation was an "after-the-fact justification." This argument is misguided. Under the Fourth Amendment, the constitutionality of an arrest does not depend on the arresting officer's state of mind. The subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable

3

cause. An arrest is not invalid under the Fourth Amendment simply because the police officer subjectively intended to base the arrest on an offense for which probable cause is lacking, so long as the circumstances, viewed objectively, justify the arrest. *Howards* at 1142.

The subjective intent of a plaintiff is also irrelevant, as the Tenth Circuit recognized in *Reeves v. Churchich*, 484 F. 3d 1244, 1253 (10th Cir. 2007). Plaintiff may have approached Officer Burton's vehicle with the most benign of motives, but that does not alter the fact that he was asked to wait until the first arrest was completed, subsequently was asked to get out of the road, and refused to do either. As *Atwater* and *Howards* make clear, it is not the role of the court to second guess whether Officer Godsil genuinely believed Plaintiff posed a hindrance or danger to the officers and/or oncoming traffic, or was simply angry Plaintiff ignored his order to get out of the street. "Contempt of cop" may be a favorite buzz phrase of police procedures experts, *See* Plaintiff's Response at p. 15, but it has no relevance to the application of the objective reasonableness standard in Fourth Amendment cases.

In *Medina v. Cram*, 252 F.3d 1124 (10th Cir. 2001), the Tenth Circuit held a plaintiff could not defeat an otherwise valid claim for qualified immunity simply by submitting a conclusory expert affidavit stating that the defendant officers' actions did not conform to accepted police practices. *Id.* at 1133.[3] This is because claims based on violations of state law and police procedure are not actionable under § 1983, and because the reasonableness standard does not require that officers use the least intrusive means possible. *Id.* Considering an expert's assertions

---

[3]The affidavit at issue is *Medina* is fairly detailed, and quite similar to the Expert Report of Dan Montgomery offered by Plaintiff in the instant case. Compare Plaintiff's Exhibit 7 with *Medina* at 1138-1140. The deficiency in both affidavits is not the level of detail but the failure to highlight specific disputed issues of fact. *See, Medina* at 1133.

regarding other means of handling a situation would be improperly "evaluating the officers' conduct from the 20/20 perspective of hindsight rather than from the perspective of an officer making split-second judgments on the scene." *Id.*

Additionally, expert testimony regarding whether probable cause existed for arrest, *See* Plaintiff's Response Brief at p. 14, is inappropriate under *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988). Under *Specht*, an expert witness may not offer an opinion on applicable principles of law. *Id.* at 808. Whether the facts and circumstances within the arresting officer's knowledge create probable cause is a legal question for the court, to be decided on an independent and objective standard. *Howards* at 1141. Expert testimony on the existence of probable cause is neither necessary nor appropriate, because such testimony violates the well-established principle that the court is only adjudicator of the law. *Specht* at 809.

In the context of qualified immunity, the relevant legal issue is whether a reasonable officer could have believed that probable cause existed to make the arrest. *Koch v. City of Del City*, 660 F. 3d 1228, 1241 (10th Cir. 2011). Under this framework, sometimes referred to as "arguable probable cause," even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity. *Id.* Plaintiff cites *Koch* for general qualified immunity principles, and for the proposition that "police officers may not ignore easily accessible evidence." *See*, Plaintiff's Response at p. 15-16. This general principle is well-established, but does not support liability in the instant case. The evidence Plaintiff asserts Officer Godsil should have investigated are the deeds, plats, surveys, and mortgage releases relating to Plaintiff's ownership of property on both sides of the street. *See*, Plaintiff's Response at p. 11, citing

Plaintiff's Exhibits 8, 9, 10, 11, 12, 13, 15, 16 and 17. Presumably, Plaintiff did not have this paperwork in his hands or pockets while improperly trying to interact with the officers at the scene. It was not, therefore, easily accessible to Officer Godsil. Even if the deeds were available, they do not establish Plaintiff had a right to remain in the road.[4] Under *United States v. Sanchez*, 555 F. 3d 910, 919 (10th Cir. 2009), courts should interpret the obstruction statute in a common-sense manner. Plaintiff does not dispute the evidence that, regardless of title, the road was being used as a public roadway. Deposition of Daniel Godsil, p. 19, relevant pages attached as Exhibit 1. Thus, as in *Koch*, Plaintiff has failed to identify any "easily accessible evidence" which "would have altered [Godsil's] understanding of the situation." *See*, *Koch* at 1240.

Although referencing *Koch* for general qualified immunity standards, Plaintiff wholly ignores the specific facts and analysis of *Koch*. The Response Brief makes no attempt to distinguish or even discuss the case. *Koch* is a 2011 Tenth Circuit case granting qualified immunity for an arrest made under the Oklahoma obstruction statute. *Id.* at 1239. As such, it is highly relevant to the issue of whether it was reasonable for Officer Godsil to believe he had probable cause to arrest Plaintiff for refusing to obey the order to get out of the street. To survive a motion for summary judgment based on qualified immunity, the plaintiff must show the right at

---

[4]Plaintiff's discussion of this issue is somewhat confusing, but if counsel is following it correctly he is arguing he owns land on both sides of Madison Street. The actual roadway was deeded to City, but was subsequently maintained by Plaintiff's family. His dissatisfaction with the level of upkeep provided by the City does not, however, legally negate the prior deed. No reasonable officer should be required to sort out issues of ownership, prescription and statute of limitations on the spur (and in the heat) of the moment prior to concluding he could order an individual out of a road traveled by the general public.

issue was clearly established in a particularized sense. *Mecham* at 1206. Nevertheless, instead of addressing *Koch, Sanchez* or any of the other Tenth Circuit and Oklahoma cases upon which Officer Godsil relies in his Motion for Summary Judgment,[5] Plaintiff asks the court to deny qualified immunity on the basis of several much older cases from other jurisdictions.[6] Decades-old cases from other states, with different statutes and dissimilar facts, do not clearly establish the law in this jurisdiction. Even if the court is inclined to consider these cases, however, it is far from clear they support Plaintiff's position.

For example, although *People v. Stoudt*, 198 Ill. App. 3d 124, 555 N.E. 2d 825 (1990) did overturn a conviction for obstruction based on the individual's failure to cooperate with a request to leave the road, the analysis of *Stoudt* was significantly limited in the more recent case of *People v. Synnott*, 349 Ill.App.3d 223, 811 N.E.2d 236 (2004). *Synnott* upheld a conviction for obstruction based on the individual's refusal to obey an order to exit his vehicle, in large part out of concerns for officer safety. Thus, *Synnott* stated:

> If a civilian whose presence at a particular location impedes lawful police activity may refuse to move without fear of prosecution, confrontations with police are far more likely to achieve a physical dimension, substantially increasing the physical danger to both the officer and the civilian. Certainly officers are authorized to use reasonable physical force if necessary, but it is clearly preferable to obtain

---

[5]*See, United States v. Christian*, 190 Fed.Appx. 720, 2006 WL 2328749 (10th Cir. 2006), *Galleta v. Deasy*, 9 Fed.Appx. 909, 2001 WL 575431 (10th Cir. 2001) and *Trent v. State*, 1989 OK CR 36, 777 P. 2d 401.

[6]Defendant Godsil recognizes a plaintiff may meet his or her burden by pointing to "a Supreme Court or Tenth Circuit opinion on point, or [by showing] that his or her proposition is supported by the weight of authority from other courts." *Howard* at 1141. However, the latter generally is understood to mean recent cases from other circuits, and applies when the Tenth Circuit has not yet addressed an issue. Law from other jurisdictions should never supplant or supercede relevant, recent Tenth Circuit cases.

compliance through the threat of criminal penalties. Stated differently, it cannot be good policy to remove the only stick that the police have, other than the billy club itself, to persuade such recalcitrant individuals. . . . In our view, a meaningful threat of prosecution for the sort of noncooperation in *Flannigan* and the present case is necessary to reduce the likelihood of physical confrontations. *Synnott* at 240-241.

Similarly, *Columbus v. Waterman*, 41 Ohio App. 2d 98, 322 N.E. 2d 291 (1974) was later distinguished in *City of Toledo v. Mitchell*, 1991 WL 38036 (Ohio App. 6 Dist.). As in *Synnott*, the court focused on the important consideration of officer security, stating:

> In *Columbus v. Waterman*, the act of remaining on the sidewalk after being instructed to leave was not unlawful conduct because it did not constitute an obstruction or interference with an arrest. In this case, substantial evidence exists to support a ruling that appellant's failure to leave was unlawful conduct because his very presence prohibited the officers from stabilizing and defusing an existing emergency situation. As appellee points out, individuals are frequently arrested while located on their own property. If police were prevented from controlling the behavior of a person simply because the person was on his or her own property, "suppression of riots would be impossible." Furthermore, police would be placed under the unreasonable burden of attempting to decipher, in the midst of an emergency, who was or was not located on their own property before taking action to bring the situation under control. *City of Toledo* at *3.

In the instant case, Plaintiff argues he was not belligerent, menacing, threatening or interfering with the arrest of the third-party or the police on the scene. *See*, Plaintiff's Response at pp. 11-12. However, he does not dispute the evidence that the initial arrest was not complete, because the initial arrestee had not yet been placed in a police car. *See*, Exhibit 1, p. 35, 45-46. As Plaintiff described this scene, the arrestee was on the ground, fuming and slobbering. Deposition of Wesley Moore, pp. 28-29, relevant pages attached as Exhibit 2. This was an existing emergency situation, and Plaintiff's insistence that the officers at the scene address his requests immediately hampered the officers' ability to control and conclude the initial situation. As in *United States v. Christian*, 190 Fed.Appx. 720, 2006 WL 2328749 (10th Cir. 2006), the relevant issue with respect

to probable cause was not whether Plaintiff was *actually* obstructing the officers' ability to complete the first arrest but rather whether an objectively reasonable officer could conclude Plaintiff was violating the obstruction statute. It was reasonable for Officer Godsil to reach this conclusion. None of the authority cited by Plaintiff clearly establishes he had a right ignore Officer Godsil's order to get out of the street. The arrest was proper under *Atwater,* and Officer Godsil is entitled to qualified immunity under the analysis of *Koch, Christian* and *Sanchez.*

One final issue must be addressed. In his Response to Officer Godsil's Motion for Summary Judgment, Plaintiff appears to be asserting an excessive force claim against Officer Godsil. No such claim was made in the Petition, and Plaintiff never sought leave to file an Amended Complaint. Essentially, Plaintiff is asking this court to indirectly amend his claims more than six months after the deadline to file an Amended Complaint. *See,* Scheduling Order, attached as Exhibit 3. Allowing Plaintiff to add an excessive force claim against Officer Godsil approximately one month before the scheduled trial date is highly prejudicial.

As the Tenth Circuit recognized in *Fogarty v. Gallegos*, 523 F. 3d 1147, 1160 (10th Cir. 2008), excessive force and wrongful arrest are separate inquiries. Applying this analysis, *Arias v. Pacheco*, 380 Fed.Appx. 771, 2010 WL 2171021 (C.A.10 (N.M.)) found it was proper for a trial court to refuse to amend the pretrial order in an excessive force case to include a wrongful arrest claim, and to refuse to admit evidence relating to the wrongful arrest claim. *Arias* stated:

> Nowhere was there mention of wrongful arrest or excessive detention. Excessive detention/wrongful arrest and excessive force are distinct theories of liability. The two theories have different elements and require different proof. The two are not interchangeable and the Pretrial Order did not encompass both theories. *Arias* at *3.

As the court noted, the defendants would have been significantly prejudiced if they were

9

required to defend a new theory of the case without adequate time to prepare. *Id.* Undue prejudice to a party is a sufficient reason to deny an untimely motion to amend. *Ritchie v. Lockheed Martin Corporation*, 558 F.3d 1161, 1166 (10th Cir. 2009).[7]

The same potential for prejudice exists in the instant case. As *Koch* explains, to prevail on a claim of excessive force based on too tight handcuffs, a plaintiff must show more than *de minimus* injury. *Koch* at 1247-1248. Superficial abrasions and speculative injuries are not enough. *Id.* If Defendant Godsil had known he would be asked to defend an excessive force claim, he would have employed a police procedures expert. Although probable cause is not a proper issue for expert testimony under *Specht*, issues such as when handcuffs should be applied and/or double-locked are the type of issues on which a police procedures expert can assist the jury. Additionally, given that Plaintiff's medical history suggests other causes for ongoing numbness, Defendant Godsil might have listed a medical expert.[8] Consistent with *Arias* and *Ritchie*, Plaintiff's attempt to add an excessive force claim against Officer Godsil should be denied. Officer Godsil is entitled to summary judgment.

---

[7] The potential prejudice caused by Plaintiff's untimely request to add a new cause of action, and the measures necessary to prevent this prejudice, will be discussed in greater detail in a separate pleading. Space and time constraints make it impossible to adequately cover the issue in this reply brief.

[8] Given that the evidence of injury presented by Plaintiff is very similar to the evidence found insufficient to raise an excessive force claim in *Koch*, Officer Godsil might have chosen to proceed without an expert. The point is these are the type of strategic decisions that counsel and clients should make in a timely manner during the regular course of discovery, rather than in haste following an untimely addition of an entirely new theory of liability.

Respectfully submitted,

/s/ Stacey Haws Felkner
Stacey Haws Felkner, OBA #14737
Manchester & Knight, PLLC
One Leadership Square, Suite 800 N
211 North Robinson
Oklahoma City, Oklahoma, 73102
Telephone: (405)235-4671
Facsimile: (405)235-5247
Attorney for Defendant Oklahoma City Police Officer Daniel Godsil

## CERTIFICATE OF MAILING

This is to certify that on this 12th day of January, 2012, a true and correct copy of the above and foregoing was served on the following, who are registered participants of the ECF System:

Rex D. Brooks
1904 N.W. 23rd Street
Oklahoma City, OK 73106

Richard C. Smith
Laura Calvery
Assistant Municipal Counselors
200 North Walker, Suite 400
Oklahoma City, OK 73102

/s/ Stacey Haws Felkner
Stacey Haws Felkner, OBA #14737